IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LISA H.[1], | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 24-CV-0361-SMY |
| | ) |
| MARTIN O'MALLEY, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|       Defendant. | ) |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Lisa H. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB on February 5, 2021, alleging a disability onset date of November 25, 2020 in her DIB application (Tr. 205–209). Her claim was initially denied on December 1, 2021 (Tr. 87) and denied again on reconsideration on July 1, 2022 (Tr. 97).

Plaintiff requested an evidentiary hearing which took place on February 23, 2023 (Tr. 36–86). Following the hearing, the Administrative Law Judge ("ALJ") denied Plaintiff's application on March 17, 2023 (Tr. 17–31). The Appeals Council denied Plaintiff's request for review on April 10, 2023, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1–3).

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

**Issue Raised by Plaintiff**

Plaintiff raises the following issue for judicial review: The ALJ erred by failing to include the mental limitations he found credible in the residual functional capacity (RFC) finding.

**Legal Standard**

To qualify for disability insurance benefits, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked

with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date (Tr. 24). He found that Plaintiff had the severe impairments of osteoarthritis/degenerative joint disease, lumber spine degenerative disc disease, and chronic obstructive pulmonary disease (COPD)/asthma/mild emphysema, with a left lung upper lobe nodule (Tr. 19), and that she had mild limitations in her ability to interact with others and concentrate, persist, or maintain pace. But the ALJ concluded that she did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. Part 404 (Tr. 19, 25–26).

The ALJ concluded as follows regarding Plaintiff's Residual Functional Capacity ("RFC"):

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that she can lift/carry 20 pounds occasionally and 10 pounds frequently, sit for at least 6 out of 8 hours and stand/walk for about 6 out of 8 hours.

> However, she can occasionally climb ladders, ropes, or scaffolding, climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to humidity, fumes, dusts, odors, gases, areas or poor ventilation, and temperature extremes of heat and cold.

(Tr. 26)

The ALJ credited the Vocational Expert's testimony and determined that Plaintiff was able to perform past relevant work as a fast-food manager (Tr. 29). As a result, he concluded that Plaintiff was not disabled under sections 216(i) and 223(d) (Tr. 30–31).

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### Agency Forms

Plaintiff was born in 1961 and was 59 years old on the alleged onset date of November 25, 2020 (Tr. 189, 209). She claims that she suffers from arthritis in both hands, right carpal tunnel syndrome, a torn tendon in her right hand, spots on her lungs, poor circulation in her feet, and depression (Tr. 209).

### Evidentiary Hearing

Plaintiff was represented by counsel at her hearing on February 23, 2023 (Tr. 36) and testified to the following: she last worked as a produce manager in 2020 (Tr. 85-86). In 2022, she started seeing a therapist for depression and was prescribed different types of medication (Tr. 63–65). The medications were ineffective for her depression (Tr. 65). Previously, she claimed to have developed carpal tunnel syndrome while working as a kitchen manager in 2012 (Tr. 46–48) and arthritis in her knees and shoulder in 2017 (Tr. 52). As a result, Plaintiff needs to wear a wrist

brace for her right hand at night, cannot stand for over 45 minutes, and has difficulty shampooing (Tr. 54, 55, 58). Plaintiff was also diagnosed with asthma and lumbar spondylosis (Tr. 59).

Vocational Expert Stuart Lloyd Gilkison ("VE") testified that Plaintiff could perform her past work as a fast-food manager (Tr. 81). In response to hypotheticals posed by the ALJ, the VE testified as follows:

> Q. All right, for hypothetical Number 1, I would like you to please assume a hypothetical individual of the Claimant's age, education, and past work experience who would be limited to a light exertional range of work activity, which is going to be defined as lifting and carrying 20 pounds occasionally, 10 pounds frequently, sitting for at least six out of eight hours, standing and walking for, I'm going to start with six out of eight hours as well. The hypothetical individual could only occasionally perform all postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling. The individual also would need to avoid concentrated exposure to humidity, fumes, dust, odors, gases and areas of poor ventilation and temperature, extremes of heat and cold. And that's going to be all for Hypothetical Number 1. Given those limitations identified in hypothetical number one, would any of the Claimant's past work be available to such a hypothetical individual?
>
> A. Fast-food manager, as described in the DOT but not as it was described by the Claimant during testimony.
>
> Q. All right. For Hypothetical Number 2, if I add a Hypothetical Number 1 that the individual would be able to frequently but not constantly use the right upper extremity, and that is the dominant upper extremity, for handling, fine fingering, feeling, pushing, pulling, and operating hand controls, would that affect any of those jobs identified previously, or that job identified previously?
>
> A. No, Your Honor.
>
> Q. And for Hypothetical Number 3, if I also added to Hypotheticals 1 and 2 that the individual also would be able to frequently use the left upper extremity for handling, fine fingering, carrying, pushing, pulling, and operating hand controls, does that affect that past work as a fast-food manager?
>
> A. No.

(Tr. 80–81)

Following this exchange, Plaintiff's counsel posed questions to the VE regarding absenteeism and the hearing concluded (Tr. 83–84).

## Relevant Medical Records

On January 22, 2020, Plaintiff first visited Southern IL Healthcare Foundation for a routine check-up, where osteoarthritis was noted and a CT scan of the chest was recommended. She underwent the CT scan on February 1, 2021, which revealed a discoid nodule at the left upper lobe. (Tr. 299, 486).

On September 28, 2021, Plaintiff consulted NP-C Jamie Bump, complaining symptoms of cough, chest pain, fatigue, and vomiting. Nurse Bump noted her to be a smoker and continued her on Spiriva, Flonase, and Albuterol (Tr. 331).

On February 24, 2022, NP-C Bump reviewed a follow-up CT scan of Plaintiff's chest that showed the persistent left upper lobe nodule and mild pulmonary emphysema (Tr. 370). Plaintiff expressed no interest in smoking cessation (*Id.*).

On June 1, 2022, Plaintiff saw Dr. Adrian Feinerman, who conducted pulmonary function testing. The test showed a pre-bronchodilator FEV of 1.20 liters and a post-bronchodilator FEV of 1.42 liters. The study was "consistent with severe obstructive disease with significant reversibility, suggestive of a reversible component of obstructive disease, namely bronchial asthma." (Tr. 396–398).

During the same visit, Plaintiff also reported that she was experiencing degenerative joint disease in the knees. Dr. Feinerman concluded that Plaintiff demonstrated no limitations of motion at any joint and was able to sit, stand, walk, lift, carry, and handle objects without limitation. Plaintiff also claimed some degenerative changers at the lumbar spine. Dr. Feinerman ordered x-

rays, which showed moderate degenerative disc disease at L5-S1, lumbar spondylosis, and mild degenerative disc disease at L4-L5 (Tr. 405).

On June 8, 2022, Dr. Jonathan Thomas-Stagg conducted a consultative mental status examination on Plaintiff. During the examination, Plaintiff expressed "a very pessimistic view of the world" and endorsed a lack of motivation and low energy (Tr. 494).[2] Dr. Thomas-Stagg found Plaintiff alert and fully oriented and reported that Plaintiff's thought content and processes were within normal limits. However, he diagnosed depression by history (Tr. 496).

On October 31, 2022, NP-C Bump assessed Plaintiff with depressive disorder amid complaints of anxiety and depression due to major life stressors. NP-C Bump prescribed Celexa and advised Plaintiff to seek counseling (Tr. 511).

On November 29, 2022, Plaintiff began her mental therapy with Ms. Billie Hasewinkle. During one session on December 12, 2022, Plaintiff discussed "things from her past that she felt [made her] have the feelings of being so annoyed with the world." (Tr. 651). During a session on January 10, 2023, Hasewinke observed that Plaintiff was "starting to open up more about the things that [were] bothering her." (*Id.*).

On January 20, 2023, Plaintiff met Jamee Baltzell, APRN, who diagnosed chronic posttraumatic stress disorder and prescribed Duloxetine (Tr. 574).

### State Agency Consultants' Opinions

On November 30, 2021, Dr. Dorothy Leong reviewed Plaintiff's record and found that she did not have a severe physical impairment. On June 30, 2022, Dr. Prasad Kareti, upon

---

[2] During the consultative mental status examination with Dr. Thomas-Stagg, Plaintiff also claimed she had carpal tunnel syndrome and suffered pain from arthritis in both hands (Tr. 493).

reconsideration, identified some severe impairments and provided an assessment of Plaintiff's exertional, postural, and environmental limitations (Tr. 19–20).

On November 20, 2021, Howard Atkins, PhD concluded that Plaintiff did not have a medically determinable mental impairment. Upon reconsideration, on June 26, 2022, Gayle Williamson, PsyD, identified depression as a medically determinable impairment (Tr. 20).

## Discussion

Plaintiff argues that the hypothetical questions the ALJ posed to the VE and his ultimate RFC assessment did not address her deficiencies in concentration, persistence, or pace. The Court agrees.

In assessing a claimant's RFC, the ALJ must consider *all* of the relevant evidence in the record and provide a "narrative discussion" that cites to specific evidence and describes how that evidence supports the assessment. The ALJ's analysis and discussion should be thorough and "[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." S.S.R. 96–8, at *5, 7. Additionally, an ALJ's assessment must evaluate "evidence of impairments that are not severe" and "must analyze a claimant's impairments in combination." *Arnett v. Astrue*, 676 F.3d 586, 591–92 (7th Cir. 2012); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

Here, despite the fact that Plaintiff maintains contact with others, talks, plays games, goes out to eat with others, and can maintain her concentration, the ALJ found mild limitations in these areas of mental functioning (Tr. 22–23). Although the Commissioner argues the ALJ considered evidence of Plaintiff's mental limitations by reviewing her daily activities, treatment history, and previous administrative findings, the ALJ failed to include any mental limitations in his RFC analysis, nor did he incorporate hypothetical questions that accounted for these limitations in his

questions to the VE. The ALJ's current RFC cannot stand as it must take Plaintiff's problems with concentration, persistence and pace into consideration more explicitly. *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations.").

Citing *Felts v. Saul*, 797 Fed.Appx. 266 (7th Cir. 2019) and *Morales v. O'Malley*, 103 F.4th 469 (7th Cir. 2024), the Commissioner argues that "Plaintiff's contention that 'mild' limitations . . . should result in functional restriction in the RFC assessment here is incorrect." (Doc. 17, p. 7). The Commissioner misstates Plaintiff's argument. Plaintiff rightfully requests the ALJ account for all limitations he identified as supported by the record in the RFC. Because the ALJ failed to consider Plaintiff's mental impairments in the RFC assessment, reversal and remand is required. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal.").

**Conclusion**

After careful review of the record, the Court finds that the ALJ committed errors of law. Therefore, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED:  January 23, 2025

**STACI M. YANDLE**
**United States District Judge**